**UNITED STATES of America**

v.

**James BOYD.**

**Crim. No. HM76–0635.**

United States District Court,
D. Maryland.

April 19, 1977.

Jervis S. Finney, U. S. Atty., Asst. U. S. Attys. Herbert Better, Andrew Radding and Neal M. Janey, Baltimore, Md., for United States.

Nino V. Tinari, Philadelphia, Pa., for defendant James Boyd.

HERBERT F. MURRAY, District Judge.

On March 8, 1977, this court sentenced James Boyd to a term of eight years with a special parole term of three years for violation of 21 U.S.C. Section 846, conspiracy to distribute heroin. Defendant pled guilty to that charge at his rearraignment on January 31, 1977. After his sentencing, defendant's counsel, Stephen L. Miles, withdrew his appearance and was replaced by Nino V. Tinari. On March 10, 1977, defendant filed a motion to withdraw his guilty plea pursuant to Rule 32(d) of the Federal Rules of Criminal Procedure. The court held two hearings on this motion, one on April 1, 1977, and the second on April 14, 1977. At the conclusion of the second hearing, the court ruled that defendant should not be permitted to withdraw his guilty plea and stated that a written opinion would be filed.

Rule 32(d) provides that, after sentencing, the court may permit a defendant to withdraw his plea "to correct manifest injustice." Otherwise, the rule provides, a defendant may move to withdraw his plea "only before sentence is imposed or imposition of sentence is suspended". The reason for this more strict standard for withdrawal of a guilty plea after sentencing was set forth in *Kadwell v. United States*, 315 F.2d 667 (9th Cir. 1963), as follows:

> [W]ithdrawal of a guilty plea *after* sentence is conditioned by Rule 32(d) upon a showing of 'manifest injustice.' This distinction rests upon practical considerations important to the proper administration of justice. Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury. But if a plea of guilty could be retracted with ease *after* sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. The result would be to undermine respect for the courts and fritter away the time and painstaking effort de-

voted to the sentencing process. (315 F.2d at 670).

The American Bar Association *Standards Relating to Pleas of Guilty* also provide that a court should permit a defendant to withdraw his plea of guilty "to correct a manifest injustice." (Section 2.1(a)) The *Standards* go on to define specifically those instances where withdrawal is necessary to correct a manifest injustice. Section 2.1(a)(ii) requires the defendant to prove that:

(1) he was denied the effective assistance of counsel guaranteed to him by constitution, statute, or rule;

(2) the plea was not entered or ratified by the defendant or a person authorized to so act in his behalf;

(3) the plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed; or

(4) he did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement.

In the court's view, defendant has failed to prove any of the above conditions for permission to withdraw his guilty plea, nor has he shown any other reason why withdrawal of his plea is necessary to correct manifest injustice. Defendant makes three basic contentions in support of his motion. First, defendant contends that his responses at the rearraignment were made at the instruction of counsel and that he did not really understand what he was doing in pleading guilty. Second, defendant argues that the government breached the plea agreement by making certain statements at the time of sentencing. Finally, defendant contends that he pled guilty because his counsel assured him he would receive probation. The court will consider each of these points separately below.

### The Rearraignment Proceeding

Defendant testified at the hearing on April 1, 1977 that he gave the responses he did to the court's questions at his rearraignment because his counsel told him to do so. The court reviewed the transcript of the rearraignment with defendant and asked him what questions he had answered falsely at that time. Defendant testified that at the time of his rearraignment he did not want to change his plea from not guilty to guilty, that he did not understand the nature of the charge against him, that he did not understand what he was doing in changing his plea, and that he did not understand there would be no further trial if he changed his plea. Defendant further testified that he did not admit that he did what the government charged him with doing, that he did not understand the special parole term, that he did not understand all the terms of the plea agreement, that predictions had been made to him as to what sentence would be imposed, and that he was not guilty of the offense. All of this sworn testimony was contrary to the answers given by the defendant under oath at the time of his rearraignment when the court accepted his guilty plea.

Defendant explained that he gave false answers because his counsel told him how to answer the questions. Defendant testified:

Well, he told me to answer the questions as if to say that I know them, that I know that—that I know what the Judge—what Your Honor would tell me, and that way I plead guilty to the conspiracy. In other words, when he asked me did I understand the nature of the questions, I would say yes. And in turn after all of it, I would enter the plea of guilty. (Tr. of hearing on April 1, 1977, p. 31)

Defendant's attorney at the time of the rearraignment, Stephen Miles, testified at the hearing on April 14, 1977. He stated that he did not tell defendant how to answer any questions. Rather, he explained to defendant what rights he would give up in going to trial and told him that, if defendant should decide not to plead guilty, he (Mr. Miles) was ready and willing to go to trial. Mr. Miles further testified that he

explained to defendant what evidence the government had against him and what the terms of the plea agreement were. He denied having told defendant to answer the court's questions in any particular way.

In weighing the contradictory testimony of Mr. Boyd and Mr. Miles, the court does not find Mr. Boyd a credible witness. The court asks many questions at rearraignment, and it would be very difficult for counsel to instruct a defendant in advance how to answer each one. Further, Mr. Boyd was advised by the court at his rearraignment that all questions put to him should be answered completely, honestly and truthfully or he could subject himself to a possible prosecution for perjury or false statements. (Tr. of rearraignment, p. 12). It is transparently clear to the court that defendant is disappointed in his sentence and is attempting to withdraw his plea solely for that reason, tailoring his answers to the court's questions at the April 1 hearing to achieve that end. The court is aware of the importance of the Rule 11 colloquy and has revised the questions asked several times in an attempt to emphasize to defendants such as Mr. Boyd the importance of answering questions truthfully and the court's willingness to explain any matters which are not clear. It would take testimony far more convincing than that of Mr. Boyd to prove to the court that its questions at rearraignment had been a meaningless formality. Therefore, the court concludes that defendant should not now be permitted to withdraw his guilty plea on the basis of this first contention.

## The Government's Statements at Sentencing

Defendant contends that the government breached its plea agreement by making certain statements at time of sentencing. In return for defendant's plea of guilty, the government agreed that it would make no recommendation as to sentence at the time of sentencing. However, the government reserved the right "to allocute as to the nature and extent of [defendant's] criminal activity." At the time of sentencing, after the government had detailed the nature of defendant's involvement in the narcotics conspiracy, Mr. Miles stated:

Your Honor, for the last approximately twelve minutes, Mr. Radding has been talking, giving this Court the facts of evidence which were not facts of evidence in the agreed statement of facts as given to the Court.

At this time, I will make a motion to have my client vacate his guilty plea. He pled guilty to a statement of facts given to the Court. The Government is now giving ten minutes more of facts, and relating information from the Federal Agent next to him, as proof of evidence which was not presented with regard to Mr. Boyd in regard to the guilty plea that was given to the Court.

I realize the Government tried a lengthy trial and other facts came out. My client pled guilty based on a statement of facts as given by Mr. Radding. The Government reserved the right at the sentencing to point out to the Court anything they wanted to tell the Court as to the position of my client, based on the facts that my client heard in Court when he pled guilty.

\*　　\*　　\*　　\*　　\*　　\*

If the Court denies that motion I will proceed. But I believe that it's fundamentally unfair for the Court to deny it, since the Government now gives to the Court a multitude of facts which were not presented at the time my client pled guilty. (Tr. 8)

At that time, the court denied Mr. Miles' motion, stating:

The Court asked for that information. The Government reserved that right under the plea agreement. And what Mr. Radding has been giving me is no more than a response inquired into by the Court as to background facts, prior to the Court's imposing sentence.

From your experience as a criminal lawyer, Mr. Miles, you should be aware that there's nothing unusual in that. And it's done every day as a matter of course in a sentencing hearing.

So, the motion is denied. But to the extent that you want to correct or differ

with what Mr. Radding said about the details, I'll be glad to hear from either you or Mr. Boyd. (Tr. 8–9)

The court sees no reason to depart from its earlier ruling. The plea agreement makes it clear that the government reserved the right to allocute as to the nature and extent of defendant's criminal activity. The government did not restrict itself to those facts stated at rearraignment. The government attorney, Andrew Radding, testified at the hearing on April 14, 1977, that he did not agree to limit himself to the facts given at rearraignment. Nor did defendant present any evidence of such an agreement.

Defendant testified that he did not understand the meaning of the word "allocute" and that Mr. Miles never explained it to him. (Tr. April 1, 1977, at 27–28). Mr. Miles, however, testified that he did explain the meaning of the word "allocute" to defendant. In addition, at the rearraignment, the court explained to Mr. Boyd what the plea agreement meant as follows:

I just want to make sure that you understand what that means. As to the first part of that sentence, at the time of sentencing the Government is going to stand mute as far as any suggestion to the Court is concerned as to the type or length of sentence. However, the Government is reserving the right to fully describe any criminal activity on your part, not only in this matter, but, perhaps, other matters, so that the Court will have a complete and full background in order to try to determine what would be an appropriate sentence in this case. (Tr. 15)

Thus, the court finds that the government did not in any respect breach its plea agreement with the defendant and that the defendant was aware of the government's right to describe his criminal activity without being limited to the statement of facts made by the government at rearraignment.

*Length of Sentence*

Defendant's final contention is that his attorney promised him he would receive probation if he pled guilty and that he pled guilty on the basis of that promise. Defendant testified at the April 1 hearing as follows:

Q. You went into the courtroom on the day to change your plea from not guilty to guilty, what was your state of mind concerning what would happen to you if you plead guilty?

A. Well, my state of mind is what Mr. Miles—what Mr. Miles told me, if I pleaded guilty, that what him and the U.S. Attorneys had discussed between them, I would more than likely come out of it with probation.

Q. Did you ever hear Mr. Radding say to Mr. Miles, in your presence, that you were going to get probation?

A. Not in my presence, no.

Q. Did you hear any Assistant United States Attorney or any drug enforcement agent say that to Mr. Miles, in your presence, that you were to receive probation?

A. Not in my presence, no.

Q. When you entered your guilty— strike that.

When you came into the courtroom to have your change of plea determined by the Court, was it your intention and expectation that you were going to receive probation from His Honor?

A. Yes, it was. (Tr. April 1, 29–30)

Mr. Miles testified that he did not promise Mr. Boyd that he would receive probation. In fact, according to Mr. Miles, defendant fully expected to receive some period of incarceration, although he did not expect to receive eight years. Mr. Miles testified that he explained to Mr. Boyd that the length of sentence was up to the court, although he did not anticipate that the court would impose the maximum sentence of fifteen years. The testimony revealed that initial plea discussions had included the possibility that the government would recommend probation, but such a bargain was conditioned on defendant's testifying against two of his co-defendants, which he refused to do. Thereafter, the possibility of

a recommendation of probation was dropped. Mr. Miles testified that defendant knew that the government would not recommend probation and that it was not likely that the court would grant him probation.

At defendant's rearraignment, the following colloquy between the court and defendant took place:

The Court: Now, I want you to understand also that the Court will give careful consideration to any recommendation with regard to sentence that Mr. Miles may make to the Court, but the matter of what would be an appropriate sentence in your case is one that the Court alone has to decide. In other words, the Court is not bound by any recommendations that counsel on either side would make to the Court at the time of sentencing.

Do you understand that?

The Defendant, Mr. Boyd: Yes, I do.

The Court: What that means is, of course, that the Court could impose any sentence ranging from no sentence at all or probation up to and including the maximum fine of $25,000, the maximum period of confinement of fifteen years, or both, and also impose a special parole term, which, at a minimum, would be three years, but could exceed three years; and as to that special parole term, there is actually no limit in the statute as to the length it might be.

Do you understand that?

The Defendant, Mr. Boyd: Yes, I do.

The Court: Now, with that understanding, is it still your desire to plead guilty to the first count of the Indictment in this case?

The Defendant, Mr. Boyd: Yes, it is, Your Honor. (Tr. 15–16)

The court fully explained to defendant that the length of sentence was up to the court. The court also asked Mr. Boyd if he believed that there was any promise or prediction that the court would impose any particular sentence in his case, to which he answered "no." (Tr. 17)

In light of all the above, the court finds Mr. Boyd's testimony that he thought he would receive probation patently incredible. There was no reason whatever for the defendant to expect probation. His attorney, Mr. Miles, made it clear to him that the court could impose any period of confinement up to the maximum. The court also made this fact crystal clear to defendant at rearraignment. There was no allegation that the government promised defendant he would receive probation, and the plea letter clearly stated that the government would make no recommendation as to length of sentence. In sum, the court finds Mr. Boyd's testimony that he was promised probation wholly unsupported by the record. Therefore, the court will not permit defendant to withdraw his guilty plea on the basis of this third contention.

*Conclusion*

The court holds that defendant's motion to withdraw his guilty plea should be denied. The court gave the defendant sufficient opportunity to support his claims, holding two hearings that consumed a total of six hours. The court heard testimony from the defendant; defendant's wife; defendant's former attorney, Stephen Miles; and government counsel, Andrew Radding. After considering defendant's claims and the testimony presented, it is clear to the court that defendant entered his guilty plea intelligently and voluntarily, with an appreciation of the possible consequences for him. Disappointment concerning the length of sentence imposed is not a sufficient reason for withdrawal of a guilty plea.

Accordingly, it is this <u>19th</u> day of April, 1977, in the United States District Court for the District of Maryland,

*ORDERED*:

That defendant's motion to withdraw his guilty plea be, and the same hereby is, *Denied*.